FILED
7/15/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

KG

BC

IN THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LaKeisha Caples, Miles Caples, Lauren Caples, Jonathan Caples, Simone Caples | ) ) ) ) | Case No.: 1:23-cv-17002 |
| Plaintiff, | ) ) | |
| v. | ) ) | **DEMAND FOR JURY TRIAL** |
| Christian Azane Ehoule and Shanghai Chris Success Import & Export Trading Co. LTD, a business, Defendants. | ) ) ) ) | |

## COMPLAINT

Plaintiffs LaKeisha Caples, Miles Caples, Lauren Caples, Jonathan Caples, and Simone Caples (Plaintiffs) are seeking unspecified damages in excess of $75,000 against Defendants, Christian Azane Ehoule (Hereinafter Ehoule) and Shanghai Chris Success Import & Export Trading Co. LTD (Hereinafter SCSIET). The damages arise out of the following Causes of Action: (1) Racketeering (2) Human Trafficking (3) Nonconsensual Dissemination of Intimate Images (4) False Imprisonment (5) Invasion of Privacy (6) Defamation (7) Cyberstalking (8) Stalking (9) Computer Fraud (10) Intentional Infliction of Emotional Distress

## PARTIES

1. The Plaintiffs are residents of Illinois, Indiana, and Texas.

2. Defendant Ehoule, an adult male, is a resident of Ghana but resides in China. The last known address for Ehoule is his business address at No. 7, 4855 Kwong Fu Iam Road Songjiang District, Shanghai, China.

3. The second Defendant named in this complaint is SCSIET, Ehoule's registered business in China. The last known address of this entity is No. 7, 4855 Kwong Fu Iam Road Songjiang District, Shanghai, China.

## JURISDICTION AND VENUE

4. Plaintiffs are legal residents of the State of Illinois, Indiana, and Texas.

5. Defendant Ehoule is a resident of Ghana and resides in China.

6. Defendant SCSIET, Ehoule's company, is registered in China.

7. The court has personal jurisdiction over Ehoule and SCSIET because defendants have had minimal contact with the State of Illinois and residents of Illinois.

    a. On or around September 1, 2018, Ehoule was solicited to target LaKeisha Caples with the intent to engage in human trafficking and targeted violence.

        i. Ehoule recorded/livedstreamed explicit material of LaKeisha Caples without her knowledge or consent and distributed the material to Illinoisians abroad in China and residents in Illinois.

        ii. Ehoule formed a criminal enterprise with Olivia Lamb, Owner of BE Company LTD (Black Expo Beijing & Tianmi Bakery), located in Washington, DC, JayRoy (social media moniker), located in Florida, Kristie Jackson, owner of Women's CEO Project located in Houston, Texas, and others henceforth referred to as "Ehoule et al" to target, threaten, and place LaKeisha Caples and her children under surveillance. Ehoule et al incited/solicited individuals to target Plaintiffs both online and offline. Ehoule et al. have caused the loss of employment and income of Miles Caples, Lauren Caples, and Jonathan Caples. Ehoule et al formed a criminal enterprise involving interstate and foreign commerce to target Plaintiffs. The co-conspirators (Kristie Jackson, Olivia Lamb, and JayRoy) will be named in a separate civil complaint.

            1. Ehoule conspired with others to distribute the explicit content among LaKeisha Caples' social media network in Illinois.

      2. Ehoule et al. created fake accounts using LaKeisha Caples likeness and image and distributed explicit material among her social media network.

      3. Ehoule et al incited/solicited individuals to create a targeting campaign in Illinois against Plaintiffs.

   iii. On or around September 1, 2018, While in China, Ehoule contacted Lauren Caples, who is a resident of Illinois through his business, SCSIET, WeChat, Instagram, and Facebook account.

   iv. On September 20, 2018, Ehoule contacted Lauren Caples in Illinois from a fake Facebook account.

8. Ehoule's actions began in or around August 2018 and is ongoing; therefore, Plaintiffs are within their timeframe to file a complaint. Additionally, pursuant to 18 U.S.C §1595 the statute of limitation for human trafficking is 10 years after becoming aware of the crime.

9. The court has federal jurisdiction pursuant to 28 U.S.C § 1331. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the supplemental claims share a nexus with the federal claim or all arise out of the same set of circumstances and events. This court has subject matter jurisdiction because the claim comes under federal question.

10. This court has a diversity of citizenship pursuant to 28 U.S.C § 13.32. Defendants are located in a foreign country; however, they have made significant contact with the State of Illinois, Illinois residents, and Plaintiffs in Illinois.

11. The dispute amount sought for this claim exceeds $75,000.

12. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions give rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

13. Beginning around August 2018, LaKeisha Caples moved to Guangzhou, China to teach and later began a relationship with Ehoule, who was also a teacher in Shanghai. Ehoule contacted LaKeisha Caples on the Wechat platform in an expat teachers forum. Over the next couple of months, Ehoule contacted LaKeisha Caples expressing interest in a romantic relationship. Ehoule did not disclose that he was part of a criminal network and solicited to defraud Plaintiff by recording and distribute explicit material of her.

14. Beginning around December 25, 2018, Ehoule transported and harbored LaKeisha Caples in Yantgzee, China and recorded explicit material without her knowledge or consent.

15. Around January 2019, LaKeisha Caples learned that Ehoule received a large sum of money on belief that he was solicited to defraud her by recording and distributing sexually explicit material of her by Olivia Lamb, JayRoy, and Kristie Jackson.

16. Around January 2019, JayRoy, an acquaintance of Ehoule, began contacting LaKeisha Caples, and she rebuffed him. When his advances persisted, she notified authorities. JayRoy, monitoring LaKeisha Caples' communication, began threatening Plaintiff that he would make the explicit videos of her go viral.

17. On or about February 2019, LaKeisha Caples reported Ehoule to law enforcement. At the time, Ehoule et al was monitoring LaKeisha Caples' communication and learned that she reported him to the authorities. On the WeChat platform, Ehoule threatened to further distribute the material if she continued to report him to the authorities. Ehoule also began contacting LaKeisha Caples' children via social media and email and threatening that he would send her children the explicit material.

18. On or about March 2019, Ehoule contacted LaKeisha Caples from a fake profile on the LinkedIn platform, Ehoule attempted to extort LaKeisha Caples for her silence not to further share the explicit material to people in her social network on LinkedIn and from reporting him to law enforcement.

19. On or about April 2019, Ehoule messaged LaKeisha Caples on the WeChat platform inviting her to travel to Japan with him, on belief that he was again attempting to record/livestream sexually explicit material for profit, which is a "commercial sex act."

20. On or about May 2019, when LaKeisha Caples continued to report Ehoule to law enforcement, he began distributing explicit material of her online and inciting a cyber mob.

    a. Ehoule distributed explicit material of LaKeisha Caples on Facebook social network from his account and from fake accounts.

21. On or about June 2019 to present, Ehoule distributed explicit material to third parties and incited/solicited them to contact Plaintiffs.

    a. Around June 2019, Ehoule incited/solicited an individual living in France to contact LaKeisha Caples on the WeChat platform to target her.

22. Beginning around January 2019 to present, Ehoule et al incited/solicited individuals to target and stalk Plaintiffs offline.

    a. Around August 2019, Ehoule et al solicited women to target LaKeisha Caples and break in her apartment/dwelling and place surveillance equipment.

    b. Around March 2019, an individual tagged LaKeisha Caples on Instagram and informed her that she was being recorded/streamed from her apartment.

    c. Beginning around October 2021, Ehoule et al. solicited individuals to stalk and monitor Lauren Caples as she traveled from Southern Illinois to Northwestern Illinois on the Metra train.

23. Beginning around March 2020 to present, Ehoule et al. infiltrated and bribed individuals at human trafficking organizations, small business organizations, and the Cook County court to participate in a hate and exclusion campaigns against Plaintiffs.

    a. Beginning around December 2023 to present, Ehoule et al began blacklisting LaKeisha Caples within the small business community on belief that explicit material was sent to people at Women's Business Development Center-Midwest, Sunshine Enterprises in Chicago,

    b. Beginning around March 2022, Plaintiffs were seeking an Order of Protection against Steven Carmack, an individual who was incited/solicited to engage in targeted violence against Plaintiffs, when information on court documents at Cook County Domestic Violence court were changed including service address that prohibited the Lake County Sheriff's Office from servicing Respondent with court documents.

    c. Around March 2020 to present, Ehoule et al. began contacting staff and survivors of human trafficking organizations to blacklist LaKeisha Caples. These organizations include Survivor Alliance, Shyne Global (Shyne San Diego), Panorama Global (Reclaim Coalition), You Are More Than, National Survivor Network, National Human Trafficking Technical Assistance Center, etc

24. Beginning around March 2019 to present, Ehoule et al. conspired to invade Plaintiffs privacy by illegally obtaining their medical records and school records and sharing them online.

25. Beginning around June 2019 to present, Ehoule et al. conspired to falsely imprison LaKeisha Caples by restricting and prohibiting her movements and separating her from her children.

    a. Beginning around June 2020, LaKeisha Caples fled her apartment and went into a safe house and had to repeatedly be relocated to different locations because Ehoule et al were soliciting women to go into the safe houses to target Plaintiff. This was reported to the FBI in Chicago and New York and Homeland Security in Alabama. Some of the safe houses that Plaintiff was forced to flee to are:

        i. St. Judes House in Crown Point, Indiana

        ii. Stepping Stones in Michigan City, Indiana

    iii.    Haymarket in Chicago, Illinois

    iv.    Community Crisis Center in Elgin, Illinois

    v.    The Wellhouse in Odenville, Alabama

    vi.    The Potter's Hands in Corning, New York

    vii.    The Net-Arbor Development Center in Corning, New York

    viii.    Survivor Advocacy Center of the Finger Lakes in Newark, New York

    ix.    A Safe Place in Zion, Illinois

26. Beginning around March 2020 to present, Ehoule et al conspired to engage in a pattern of stalking and harassment by soliciting individuals to place Plaintiffs under illegal surveillance and monitor them in their respective homes, places of employment, and in public spaces.

## COUNT I: RACKETEERING

27. Plaintiff re-alleges the allegations as stated in paragraphs 1-26

28. Beginning on or about September 2018 to present, Defendant violated Federal Statute 18 U.S.C. §1962 Racketeering Influenced and Corrupt Organizations Act (RICO) and State of Illinois statute ILCS 5/Article 33G-1-4 when he knowingly organized a criminal enterprise along with Olivia Lamb, JayRoy (moniker), Kristie Jackson, and others to further the goal of human trafficking under Sections 1581-1592 (relating to peonage, slavery, and trafficking in persons). Ehoule et al. engaged in a pattern of racketeering activities including human trafficking, the distribution of nonconsensual intimate images, crime for hire, bribery, etc that has extended for over a five-year period and is involving interstate and foreign commerce including the sale and distribution of explicit material under Section 1461-1465 (relating to obscene matters). Defendant organized and maintained individuals to engage in long-term criminal activity and a pattern of predicative activity that has had more than 3 occurrences over the span of 4 years. Defendant engaged in bribery, extortion, stalking, involuntary servitude, voyeurism, and

human trafficking to further the enterprise of slavery and human trafficking. The supplemental claim share a nexus with the federal claim and all arise out of the same set of circumstances and events.

### COUNT II: HUMAN TRAFFICKING

29. Plaintiff re-alleges the allegations as stated in paragraphs 1-26

30. Beginning on or about September 2018 to present, Defendant violated the 13th amendment holding LaKeisha Caples in slavery, bondage, and involuntary servitude, Federal statute 22 U.S.C. § 7102 Trafficking Victims Protection Act (TVPA) of 2000, as amended and State of Illinois statute 740 ILCS § 128/5 when he conspired with others to use force, fraud, and coercion to engage in a pattern of slavery, involuntary servitude, peonage, human trafficking, and exploitation for profit and other things of value.

31. Ehoule et al. violated 18 U.S.C. § 1591 Sex Trafficking under the TVPA 2000 when he conspired to record and/or stream private and explicit material of LaKeisha Caples for profit in both public spaces and private dwellings. The TVPA identifies the recording, distribution, and sale (for profit or anything of value) of explicit material as a "commercial sex act" which constitutes a violation of federal and state human trafficking laws.

32. Ehoule et al. violated 18 U.S.C. § 1584 Involuntary Servitude under the TVPA 2000 when he conspired with others to use illegally record/stream explicit material of Plaintiffs for profit without their knowledge or consent.

33. Ehoule et al. violated 18 U.S.C.§ 241 conspiracy against rights when he conspired with others to injure, oppress, threaten, and intimidate Plaintiffs. The supplemental claim(s) share a nexus with the federal claims and all arise out of the same set of circumstances and events.

### COUNT III: NONCONSENSUAL DISSEMINATION OF PRIVATE IMAGES

34. Plaintiff re-alleges the allegations as stated in paragraphs 1-26

35. Beginning on or about September 2018 to present, Ehoule et al. violated State of Illinois statute 720 ILCS 5/11-23.5 Nonconsensual Dissemination of Intimate Images when he conspired with others to record/stream explicit material of LaKeisha Caples without her knowledge or consent for distribution and sale.

36. The Defendant's actions were willful and malicious and sought to embarrass and shame LaKeisha Caples when he listed Plaintiff's identifying information along with the explicit material of her on pornography websites and distributed material to Plaintiff's social network.

## COUNT IV: FALSE IMPRISONMENT

37. Plaintiff re-alleges the allegations as stated in paragraphs 1-26

38. Beginning on or about August 2018 to present, Defendant violated Federal Statute 25 CRF § 11.404 and State of Illinois statute 720 ILCS 5/10-3 when he unlawfully restrained Plaintiffs and violated their movement, liberty, and rights. The supplemental claim(s) share a nexus with the federal claim and all arise out of the same set of circumstances and events. Plaintiffs did not consent to this restraint and believe that they were not free to travel freely. Plaintiffs have been detained and their movements restricted for a duration of nearly five years.

## COUNT V: INVASION OF PRIVACY

39. Plaintiff re-alleges the allegations as stated in paragraphs 1-26

40. Beginning on or about September 2018 and continuing to present, Ehoule violated Federal statute § 652B Intrusion Upon Seclusion and State of Illinois statute ILCS 5/26-4. The supplemental claim(s) share a nexus with the federal claim or all arise out of the same set of circumstances and events. LaKeisha Caples had a reasonable expectation of privacy in their home, dwelling, hotel, and other similar private spaces to not be recorded. Defendant's actions were highly offensive to a reasonable

person. Defendant intentionally and without consent or regard to Plaintiffs' privacy, placed surveillance equipment in their private dwelling and placed Plaintiffs under surveillance, intruding upon Plaintiffs' solitude, public disclosure of private facts, portraying Plaintiff in a false light, or appropriation of Plaintiffs' name or likeness. On or about December 25, 2018 to present, Defendant conspired with others to criminal trespass or hack Plaintiffs' computers and cellphones to monitor their communication and movement both online and offline. That communication included the theft of intellectual property that was illegally published by other entities. Defendant violated Federal statute §652D Publicity given to private life when he distributed explicit material, private documents (known as doxxing) phone calls, Zoom meetings, Zoom calls with therapists, medical records, and other private documents and conversations online. Defendant conspired with others to use Plaintiffs private material go viral and to monetize it. After Defendant distributed the material online, celebrities, bloggers, and influencers began using their platforms to create satire and commentary of Plaintiffs' private information as content on belief that it was for profit and other things of value; third parties also sought to subvert the severity of the case by polarizing the targeted violence, abuse, and sexual violence of Plaintiffs as comedy and entertainment. Plaintiffs reported this invasion of privacy to local law enforcement, FBI, Homeland Security-HSI, and other governmental agencies.

**COUNT VI: DEFAMATION**

41. Plaintiff re-alleges the allegations as stated in paragraphs 1-26

42. Beginning on or about September 2018 to present, Ehoule et al. violated Federal Statute 28 U. S. C. § 4101 and State of Illinois statute 740 ILCS 145/1-3 when he distributed private and explicit material of Plaintiffs, conspired to record/stream and sale private and explicit material, made false and defamatory statements with malice, and portrayed Plaintiffs in a false light. Defendant identified Plaintiffs by publishing personally identifying information on pornography websites to allow Plaintiffs to be

identified. The supplemental claim(s) share a nexus with the federal claim or all arise out of the same set of circumstances and events. The Defendant's statements and/or actions are not be protected by privilege. The Defendant's false and/or defamatory actions and statements were committed with malice and have caused harm to the Plaintiff's reputation. The defamation has a nexus with interstate and foreign commerce as Defendant sought to make the explicit material go viral and be distributed around the globe.

### COUNT VII: CYBERSTALKING

43. Plaintiff re-alleges the allegations as stated in paragraphs 1-26

44. Beginning on or about August 2018 and continuing to present, Defendant violated Federal statute 18 U.S.C. § 875 (c) Cyberstalking and State of Illinois statute, 720 ILCS 5/12-7.5 (a) when he used electronic communication to threaten, harass, intimidate, and distribute explicit material. The supplemental claim(s) share a nexus with the federal claim or all arise out of the same set of circumstances and events. Defendant violated Federal statute 18 U.S. C. §2261A(2) (ii) immediate family, when he conspired with others to stalk and harass Plaintiffs' family using electronic communication and surveillance. Ehoule et al, and those he incited and solicited, violated Federal statute §2261A(2) (iv) service animal when he posted threatening messages directed towards Plaintiffs' dog. Beginning around September 2018 to present, Ehoule et al. engaged in cyberstalking by, sending threatening messages online from his business WeChat and Facebook accounts and from fake accounts on WeChat, Facebook, and LinkedIn threatening Jane Roe 1 to distribute explicit material to her social network if she continued to report him to law enforcement.

### COUNT VIII : STALKING

45. Plaintiff re-alleges the allegations as stated in paragraphs 1-26

46. Beginning on or about September 2018 to present, Ehoule et al. violated Federal statute 18 U.S.C. § 2261A Interstate Stalking Act and State of Illinois Stalking statute 720 ILCS 5/12-7.3 when he conspired with others to engage in a pattern of stalking against Plaintiffs. The supplemental claim(s) share a nexus with the federal claim or all arise out of the same set of circumstances and events. On or about February 2019, Ehoule violated Federal statute 18 U.S.C §2261A(ii) and State of Illinois statute 720 ILCS 5/12-7.3 C (4) when LaKeisha Caples did not respond to Defendants calls or messages, he began contacting Plaintiffs's immediate family with the threat of distributing explicit material to her immediate family. On or about March 2019, Defendant violated State of Illinois statute 720 ILCS 5/12-7.3 C (2) Electronic communication when he contacted LaKeisha Caples via WeChat and threatened to distribute explicit material online if she did not answer his calls. Beginning around March 10, 2019 and continuing to present, Ehoule et al. violated Federal statute 18 U.S.C. §2261A(iv) and State of Illinois statute ILCS 720 5/12-7.3 c 1 when he threatened Plaintiffs' service animal when he posted videos of dogs being tortured on belief that it was with the intent to threaten Plaintiffs and their dog.

## COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47. Plaintiff re-alleges the allegations as stated in paragraphs 1-26
48. Beginning on or about August 2018 to present, Ehoule et al. violated Federal statute 18 U.S.C § 1030 2: C Computer Fraud and State of Illinois statute 720 ILCS 5/17-50 when they conspired with others to intentionally accessed Plaintiffs' electronic devices without authorization and with the intent to deceive, defraud, or to obtain control of or damage the computer or network. Ehoule et al. violated 720 ILCS 5/17-51 Aggravated Computer Tampering when they accessed Plaintiffs' computers or network without authorization and causing a high amount of damage or disruption, or tampering with a public utility,

public institution, or emergency service organization. The supplemental claim(s) share a nexus with the federal claim or all arise out of the same set of circumstances and events.

49. As a direct and proximate result of the Defendants actions and/or statements, Plaintiffs have suffered emotional distress, loss of reputation, emotional distress, and financial loss, loss of income, fear for personal safety, anxiety, depression, trauma, future loss and distress, and other damages. The emotional distress suffered by the Plaintiff was severe enough that it resulted in a diagnosis of PTSD, anxiety, depression, a brain injury, and other bodily harm.

### COUNT X: COMPUTER FRAUD AND ABUSE

50. Plaintiff re-alleges the allegations as stated in paragraphs 1-26

51. Beginning on or about September 2018 to present, Ehoule et al. violated a legal principle of intentional infliction of emotional distress, a violation of the law and the Plaintiffs' rights. Defendant acted intentionally or recklessly, conduct was extreme and outrageous, caused the plaintiff emotional distress, and was severe. Ehoule et al. actions were (1) reckless, extreme, and outrages exceeding all possible bounds of decency (2) high probability that his conduct would cause such distress, and caused emotional distress. The statements were made with malice and caused harm to the Plaintiffs' reputation and image. Defendant engaged in extreme and outrageous conduct by describing the specific behavior or actions of the Defendant. These actions were intentional, coordinated, and caused a direct threat to public order and safety. Beginning around August 2018 and continuing to present day, Ehoule et al. recorded, published and sold explicit material on pornographic websites and forums of Plaintiffs without their knowledge or consent.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this court:

A. A trial by Jury

B. Enter judgment in favor of Plaintiffs and against Defendants

C. Award Plaintiffs treble damages sustained by the Defendants, and the cost of this action, including reasonable attorney's fees as provided by 18 U.S.C. §1964 (c);

D. Grant such other and further relief as the Court deems just and proper.

52. Defendants' extreme and outrageous conduct was intended to cause Plaintiffs severe emotional distress.

    a. Plaintiffs have suffered severe emotional distress.

    b. On or about July 28, 2023, diagnosed LaKeisha Caples with a brain injury.

    c. October 2022, Social Security Judge ruled LaKeisha Caples disabled from her injuries.

    d. Around August 26, 2020, diagnosed LaKeisha Caples with PTSD, anxiety, and depression.

    e. On March 15, 2021, the New York State's Office of Temporary and Disability Assistance identified LaKeisha Caples as a victim of human trafficking.

    f. On July 20, 2021, LaKeisha Caples completed a (Victims Against Women's Act) VAWA affidavit certifying and identifying her as a victim of multi-victimation (domestic violence, sexual assault, stalking, and human trafficking).

    g. On or about July 2019 to present, LaKeisha Caples began counseling for PTSD from her injuries and ongoing trauma.

    h. On or about April 2023 to present, LaKeisha Caples began speech and memory therapy.

    i. Plaintiffs have lost employment and financial income due to Defendants

    j. Defendants have severely damaged Plaintiffs image and reputation

    k. Injunctions

        i. Plaintiffs request that Ehoule et al cease all solicitation, distribution of explicit material, targeted violence, stalking, harassment, hate and defamation campaigns.

    l. Damages

        i. Plaintiffs demand a trial by jury on all issues so triable

ii. Loss of wages, Future earnings

iii. Pain and suffering, Physical impairments

iv. Compensatory damages due to the malicious nature of Defendant's conduct

v. Punitive damages due to the egregious, malicious and intentional nature of Defendant's actions in an amount appropriate to punish and deter such conduct

vi. Treble damages

vii. Restitution

viii. Any other relief the court deems appropriate

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues so triable. LaKeisha Caples will sign on behalf of each Plaintiff.

Respectfully submitted,

*[Signatures: LaKeisha Caples, Miles Caples, Lauren Caples, Jonathan Caples, Simone Caples]*

Plaintiffs:

LaKeisha Caples, Miles Caples, Lauren Caples, Jonathan Caples, and Simone Caples

Around 2014, LaKeisha Caples followed Kristie Jackson online, who is the owner of the Women CEO Project located in Houston, Texas. Jackson shared mostly motivational videos and elementary information on business development. All of the information Jackson shared was common knowledge that served more as reminders and motivation for women to "get started." This is not to take away from Jackson but to put in perspective her later claim of me "copying" or plagiarizing her work. At the time I learned of Jackson, I had not started my business because my children were still in school. However, I was in the process of starting a business and regularly met with the Small Business Association (SBA) and Women's Business Development Center at Governors State University where I attended business school. Jackson, my SBA counselor along with many other business people I followed on/offline, motivated me to promote their business online. I had previously only promoted my business and personal travels to my circle of family, friends, and colleagues. After I began posting about my business, Jackson began a defamation and smear campaign. At first, I believe she was accusing me of plagiarism. She then changed it to "copying her style." I was not the only person whom she'd accused of "copying" her, so her vitriolic posts went over my head. When her posts became increasingly juvenile and direct, I realized that she was accusing me also of "copying" her. I tried to diffuse the situation, particularly because she was inciting other business women and so-called celebrities to become involved in the smear, disinformation, stalking, and hate campaigns. Jackson solicited a criminal organization to target me and my children. This criminal organization blacklisted me and continuously attempted to sabotage my business and employment. For outsiders, it is difficult to understand this punitive and territorial behavior; however, in many black and/or poor communities Jackson's behavior, unfortunately, is common and is often present in criminal networks. Although this behavior is not exclusive to Black and/or poor communities, I grew up in this culture and know best the nuances of it.

The stalking and harassment offline around 2014 when I hosted a meetup on belief that Jackson solicited people to place my children and I under surveillance on belief that Jackson solicited individuals to placing surveillance equipment in our apartment where my children and I were being livestreamed, and that Jackson and others were monetarily benefiting from the livestream, which is human trafficking. At the time this case began, three of my children were minors, which makes this also child trafficking. The same pattern and cadence of targeted violence that we experience now, we were experiencing in 2014. The targeted violence has been prolonged and has extended far and wide.

Before moving to China in 2018, I worked with Olivia Lamb, who was a former client. Lamb lives and operates a business in China. When Lamb did not fulfill our contract, we parted ways. I believe Lamb and Jackson were acquainted via social media. Later, Ehoule, who was also teaching in China, contacted me on belief that Lamb and/or Jackson solicited him to record explicit material of me. Ehoule stated to me that he had received a large sum of money from a woman for an investment in his business. I believe Ehoule lied and received money for the

explicit material. After Ehoule distributed the material online, someone with the moniker of JayRoy began contacting me. JayRoy inserted himself into the situation, and began a stalking campaign. When I reported JayRoy to the US Embassy in China, he began threatening my children and I. JayRoy began posting videos threatening everything from gang rape to using witchcraft against us. Later, African women began posting that they were hired to curse or fix me. Although I do not give credence to the practice of witchcraft, it is widely practiced in Africa and abroad. And, witchcraft is a component of a hate campaign. I believe Jackson, Lamb, Ehoule, and JayRoy conspired to escalate the smear, stalking, and doxxing campaigns in Southeast Asia. I filed reports with governmental agencies that I was being surveilled and monitored, and that my hotel rooms were being broken into where I had to constantly relocate. In September 2021, I moved into the apartment where I currently reside. Before I moved into the apartment, the residents already knew who I was because of the material being distributed online. I have filed complaints with the management companies, local law enforcement and elected officials, and federal agencies. Around April 2021, The State of New York identified my case as human trafficking because the content was sold on porn sites. Over the past 4 years, I have tried to document my experience and have amassed over 300 pages of reports and complaints filed at organizations, local police, and federal agencies.

Around March 2020, I filed a report with the Indianapolis FBI field office to inform them of my ongoing case of sexual violence, stalking, doxxing, and harassment. I never received a response from them. More importantly, in my letter, I identified to the FBI the ex-partner, Christian Azane Ehoule and other individuals who became involved in the case. I also informed them that I believed that Ehoule was solicited to record explicit material. Before contacting federal agents, I reached out to elected officials and local law enforcement in Valparaiso, Indiana without success. When the stalking, harassment, and break-ins continued to escalate, my advocate suggested that I go to a safe house. In total, I was force to relocate over 20 to flee individuals who were being solicited go to my location to engage in surveilling, stalking, and harassment. After I went into a safe house in Michigan City, Indiana, I began working with an advocate who arranged an interview with the Homeland Security-ICE field office in Oak Brook, IL. My advocate advised me to maintain the focus of my case on the ex-partner who recorded the explicit material. She advised me of this because of the evidence against him and in hopes of getting the case filed. The advocate was aware that other people were involved and that the ex-partner was solicited to record the material. It wasn't until several months later that I learned the FBI informed another advocate that they did not believe my story. According to my advocate, I was discredited by the FBI. The Indianapolis FBI field office is same office sued by the victims of the Larry Nassar & USA Gymnastics.