# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANE ROE, MILES CAPLES, LAUREN CAPLES, JONATHAN CAPLES, and SIMONE CAPLES, | ) ) ) ) |
| Plaintiffs, | ) Case No. 23-cv-17002 |
| v. | ) ) Hon. Steven C. Seeger |
| CHRISTIAN AZANE EHOULE, SHANGHAI CHRIS SUCCESS IMPORT & EXPORT TRADING CO. LTD, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Plaintiff Jane Roe[1] ("Plaintiff") and Plaintiffs Miles Caples, Lauren Caples, Jonathan Caples, and Simone Caples originally filed a *pro se* complaint using pseudonyms. *See* Cplt. (Dckt. No. 1). Plaintiffs withheld their true identities from everyone, including the Clerk's Office. This Court struck that complaint because the Federal Rules of Civil Procedure require parties to give their real names. A party can't file a complaint without telling the opposing party and the Court – let alone everyone else – who he or she is. *See* 4/12/24 Order, at 1 (Dckt. No. 12).

Plaintiffs have since filed an amended complaint using their real names. *See* Am. Cplt. (Dckt. No. 19). This Court must prescreen the amended complaint, given that Plaintiffs filed it in connection with their application to proceed in forma pauperis.

Plaintiffs also filed an omnibus motion that included a motion to seal, a motion to proceed as a class, and a motion to reconsider this Court's prior decision to deny a motion for appointment of counsel. *See* Pls.' Mtn. to Seal (Dckt. No. 20).

This Court will prescreen the complaint, before turning to the motion at hand. The punchline is that some, but not all, of the complaint survives prescreening. Jane Roe can proceed anonymously, but the rest of the Plaintiffs cannot. The Court denies the motion for class certification and the motion for reconsideration.

---

[1] As explained below, this Court is granting Plaintiff's request to proceed anonymously, given the nature of the case. Her initials are L.C. This Court will refer to Plaintiff as Jane Roe, or as "Plaintiff."

Analysis

**I.      Amended Complaint (IFP Prescreening)**

This Court previously granted Plaintiff Jane Roe's application for leave to proceed in forma pauperis. *See* 4/12/24 Order, at 3 (Dckt. No. 12). This Court prescreened the complaint as part of that process, and determined that some but not all of the claims survived prescreening. A few claims survived, but not by much. So, in the interest of clarity, this Court dismissed the complaint in its entirety, and granted leave to file an amended complaint.

Plaintiffs later filed an amended complaint. *See* Am. Cplt. (Dckt. No. 19). So, once again, the Court must prescreen the amended complaint before it can be accepted for filing. *See* 28 U.S.C. § 1915(e)(2)(B).

If the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant, then the Court must dismiss the complaint or those claims. *See id.*; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Courts screen complaints under section 1915(e)(2)(B) in the same manner that they review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). The complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

Plaintiffs filed an amended complaint that generally follows the Federal Rules of Civil Procedure. But there is a glaring problem.

Each page number of the amended complaint indicates that the complaint contains a grand total of fifteen pages. And sure enough, the fifteenth page appears to function as the end of the complaint, containing the end of the prayer for relief, jury demand, and signature block. *See* Am. Cplt., at 15 (Dckt. No. 19). So far, so good.

But there's more. After the signature block, two more pages appear at the very end, appended to the back of the filing. Without any heading, labels, or further explanation, these two pages contain several paragraphs that give an additional narrative of facts. *See id.* at 16–17.

That's a problem. The Federal Rules of Civil Procedure require clear titles and numbered paragraphs in pleadings. "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

This rule exists for good reason. A complaint and an answer are a pairing. They're an allegation, and a response – a thrust and a parry. One needs the other.

The Federal Rules require a back-and-forth in an orderly format. A defendant cannot cleanly respond to two pages of narrative text. A defendant must be able to identify each factual allegation and each claim to determine how to respond. *See* Fed. R. Civ. P. 8(b). It's easy to respond to isolated paragraphs. But it is messy to respond to several paragraphs of narrative text in a row. That's not a recipe for a clean distillation of what's at issue, and what's not.

Plaintiffs seem to understand all of this, because they have a clearly labeled "FACTUAL ALLEGATIONS" section of the complaint with numbered paragraphs. *See* Am. Cplt., at 4–7 (Dckt. No. 19). So, the Court will consider the paragraphs in that section. But the Court will disregard the two pages of narrative text that appear at the end because they do not comply with the Federal Rules.

Turning to the merits of the prescreening, this Court will first address the four Caples adult children: Miles, Lauren, Jonathan, and Simone Caples. This Court originally dismissed the Caples children because the original complaint contained almost no information about what happened to the Caples children, or why they had a claim against Defendants. *Id.* at 7.

As a preliminary note, the amended complaint never explicitly states that Miles, Lauren, Jonathan, and Simone Caples are Jane Roe's children. *See generally* Am. Cplt. (Dckt. No. 19). But the complaint does refer to Jane Roe's "children." *Id.* at ¶¶ 17, 25. Construing the allegations liberally, this Court thinks that the amended complaint can be reasonably read to imply that Miles, Lauren, Jonathan, and Simone are Jane Roe's children.

So, this Court will treat any references to Jane Roe's children in the complaint as referring to Miles, Lauren, Jonathan, and Simone Caples. If that's not the case, Plaintiffs may file a statement with the Court explaining otherwise by December 19, 2024.[2]

Unfortunately for the Caples children, the amended complaint does not provide enough factual detail about what happened to them or why they should have a claim against Defendants. The amended complaint mentions the Caples children together three times.

---

[2] Plaintiffs should clarify the factual record, if necessary. But this Court notes that, regardless of whether the four other Caples are Jane Roe's unnamed children referenced in the complaint, the four other Caples would still be dismissed from the case. As explained below, all the factual allegations about the unnamed children and the four named Plaintiffs (Miles, Lauren, Jonathan, and Simone) are not sufficient to state a claim against Defendants. As such, the factual allegations about only these four named Plaintiffs are not enough to state a claim against Defendants. So, this Court dismisses the four other Caples (regardless of whether they are Jane Roe's children).

First, the complaint asserts that Defendant Christian Ehoule "formed a criminal enterprise . . . to target, threaten, and place [Jane Roe] and her children under surveillance." *Id.* at 2. Next, the complaint says that Ehoule "began contacting [Jane Roe's] children via social media and email and threatening that he would send her children the explicit material." *Id.* at 4. Lastly, the complaint asserts that Ehoule and others "conspired to falsely imprison [Jane Roe] by restricting and prohibiting her movements and separating her from her children." *Id.* at 6.

There isn't much meat on the bone. A complaint must contain enough factual content to give rise to a plausible inference that a plaintiff has a claim. But here, the complaint does not have enough details to figure out what, exactly, happened.

The assertions that Ehoule formed a criminal enterprise to place the Caples children under surveillance, and that he conspired to separate Jane Roe from her children, don't sketch much of a picture. The bare assertions don't reveal what Ehoule specifically did, or why the Caples children should have a claim against Defendants. For example, it is not apparent whether Ehoule ever actually threatened them, let alone when and how. Also, it does not explain how Defendants kept Jane Roe from her children, or why her children should have a claim against Defendants even if Defendants did keep Jane Roe from her children.

The allegation that Ehoule contacted the Caples children via social media and email threatening to send them explicit material does a little better. That's a specific factual allegation. But that fact alone doesn't explain why the Caples children should have a claim against Defendants. As far as the Court can tell, threats of sending explicit material would not state a claim under any of the causes of action that Plaintiffs cite.[3] So, none of the assertions or allegations about the children generally are enough to state a claim.

The allegation about a conspiracy isn't any better. The complaint asserts that Ehoule and others "conspired to falsely imprison [Jane Roe] by restricting and prohibiting her movements and separating her from her children." *Id.* at 6. But the amended complaint does not explain how, if at all, Caples was separated from her children. And it does not explain how such conduct could give rise to a claim by the Caples children, in addition to a claim by Jane Roe herself.

True, the amended complaint does mention some of the Caples children by name. But even combining those paragraphs with the references to the Caples children generally, the amended complaint does not allege enough facts about the Caples children to state a claim.

Consider the allegations about Simone Caples, Miles Caples, and Jonathan Caples. The amended complaint contains no additional factual details about Simone Caples. *See* Am. Cplt., at 1 (Dckt. No. 19).

The only assertion about Miles Caples and Jonathan Caples by name in the amended complaint is that Defendants "caused the loss of employment and income of Miles Caples, Lauren Caples, and Jonathan Caples." *Id.* at 2. That assertion does nothing to explain how Defendants caused the loss of employment and income or why Miles and Jonathan should have a

---

[3] If Plaintiff is aware of any contrary authority, meaning anything suggesting that such allegations give rise to a civil claim, then Plaintiff can file a motion and present that authority to the Court.

claim about Defendants. In other words, that conclusory allegation does not allege any factual basis for a claim against Defendants.

So, this Court dismisses Simone, Miles, and Jonathan Caples from the case. (As an aside, if that conclusory allegation is about Lauren Caples, it likewise does not allege any factual basis for a claim by Lauren Caples against Defendants.)

The amended complaint contains just a little more detail about Lauren Caples. It alleges that Ehoule "contacted Lauren Caples . . . through his business, SCSIET, WeChat, Instagram, and Facebook account," and at another time "contacted Lauren Caples . . . from a fake Facebook account." *Id.* at 3. It also alleges that Defendants "solicited individuals to stalk and monitor Lauren Caples as she traveled from Southern Illinois to Northwestern Illinois on the Metra train." *Id.* at 5.

Those paragraphs do contain more content than some of the other paragraphs. But those allegations cannot give rise to a stalking claim. As explained below, this Court dismisses Plaintiffs' stalking claim because private plaintiffs cannot bring a claim under a criminal statute.

Those facts don't do enough to give rise to any other claim, either. The facts alleged are quite similar to the ones pleaded about the children generally. Putting those factual allegations together, Plaintiffs allege that Ehoule contacted Lauren Caples online and threatened to send explicit material to her. Those facts are not enough to explain why Lauren Caples should have a claim against the Defendants. So, this Court also dismisses Lauren Caples from the case.

Jane Roe is the only remaining plaintiff. The amended complaint adds some details about what happened to Jane Roe, but the factual allegations are otherwise substantially similar to the original complaint. The Court assumes that any interested reader remembers the thrust of the complaint from this Court's previous order. *See generally* 4/12/24 Order (Dckt. No. 12).

In the original complaint, Plaintiffs brought thirteen claims. This Court dismissed six of those claims (human trafficking, nonconsensual dissemination of intimate images, voyeurism, cyberstalking, stalking, and intimidation) because they were based on violations of criminal law. Jane Roe now tries to bring some of those claims again. This Court will address those claims in turn.

In the amended complaint, Jane Roe brings new claims of human trafficking (Count II), nonconsensual dissemination of private images (Count III), cyberstalking (Count VII), and stalking (Count VIII). Once again, the claims of nonconsensual dissemination of private images, cyberstalking, and stalking are based only on criminal statutes. And the claim of human trafficking appears to be based, at least in part, on criminal statutes. *See* Am. Cplt., at 8 (Dckt. No. 19).

As this Court explained in its previous order, a private plaintiff cannot obtain criminal penalties against a defendant. Only the government can enforce the criminal laws. To the extent that these claims are based on violations of criminal statutes, Counts II, III, VII, and VIII are dismissed.

5

That said, Jane Roe's claim of human trafficking requires closer inspection. Though Jane Roe points to some criminal statutes for her claims, she also points to the federal Trafficking Victims Protection Act of 2000 ("TVPA"), 22 U.S.C. § 7101 *et seq.*, as well as the Illinois Trafficking Victims Protection Act ("ITVPA"), 740 Ill. Comp. Stat. 128/1 *et seq.*

The federal TVPA creates a civil cause of action for a victim to recover damages and attorney's fees. *See* 18 U.S.C. § 1595. The ITVPA likewise creates a civil cause of action for victims, and provides for even more expansive relief, including declaratory relief, injunctive relief, recovery of costs and attorney fees, compensatory damages, punitive damages, and damages of any revenue received by the defendant from the human trafficking of the plaintiff. *See* 740 Ill. Comp. Stat. 128/15, 20.

To state a claim under the federal TVPA, a plaintiff must adequately plead that a defendant "knowingly and in interstate or foreign commerce: (1) recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person; (2) 'knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud . . . or any combination of such means will be used'; (3) 'to cause the person to engage in a commercial sex act.'" *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) (quoting 18 U.S.C. § 1591)); *see also See* 18 U.S.C. § 1595. A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." *See* 18 U.S.C. § 1591(e)(3).

Meanwhile, for a victim to state a claim under the corresponding Illinois statute, the ITVPA, the victim must plead that a defendant "knowingly subjects, attempts to subject, or engages in a conspiracy to subject the victim to involuntary servitude or human trafficking." *See* 740 Ill. Comp. Stat. 128/15(b-1). A person commits human trafficking when he knowingly "(1) recruits, entices, harbors, transports, provides, or obtains by any means . . . another person, intending or knowing that the person will be subjected to involuntary servitude; or (2) benefits, financially or by receiving anything of value, from participation in a venture that has engaged in an act of involuntary servitude." 720 Ill. Comp. Stat. 5/10-9(10)(d). Involuntary servitude occurs when a person knowingly subjects another person to labor or services obtained or maintained through, as relevant here, "physically restrain[ing] or threaten[ing] to physically restrain another person." *See* 720 Ill. Comp. Stat. 5/10-9(10)(b).

The amended complaint alleges that "Ehoule transported and harbored [Jane Roe] in Yangtzee, China and recorded explicit material without her knowledge or consent." *See* Am. Cplt., at 4 (Dckt. No. 19). It also alleges that "Ehoule received a large sum of money on belief that he was solicited to defraud her by recording and distributing sexually explicit material of her." *Id.*

Read liberally, those factual allegations appear to give rise to a federal TVPA claim and an ITVPA claim. On the federal TVPA claim, Ehoule allegedly transported and harbored Jane Roe, recorded her engaging in a sex act, and then distributed sexually explicit material of her, without her consent.

It is not entirely clear whether the alleged conduct falls within the parameters of the statutes. After all, the federal statute requires the use of force or fraud to cause someone to

engage in a "commercial sex act." *See* 18 U.S.C. § 1591(e)(3). Maybe that's what happened here, but if so, the amended complaint does not say so in a clear manner.

By the sound of things, Ehoule recorded Jane Roe engaging in a sex act, and distributed the explicit material. That sex act might have involved commercial sex, or maybe not.

Even so, at this stage, the Court will construe the complaint liberally in favor of the *pro se* litigant. The complaint alleges enough to survive prescreening.

Meanwhile, on the ITVPA claim, Ehoule allegedly transported and harbored Jane Roe, thus restraining her without her consent. He allegedly recorded sexually explicit material of her obtained while she was being restrained. And he allegedly benefitted financially by receiving payment in exchange for distributing that sexually explicit material.

So, the federal TVPA claim and the ITVPA claim in Count II survive prescreening. The claims might not pass muster down the road, but there is enough content in the amended complaint to get to the next stage of the case.

In its last ruling, this Court also dismissed three of Plaintiffs' claims (racketeering, false imprisonment, and defamation) because Plaintiffs failed to plead facts that would state a claim. Plaintiffs now try to bring those claims again. Plaintiffs bring renewed claims of racketeering (Count I), false imprisonment (Count IV) and defamation (Count VI).

The racketeering and defamation claims fail for the same reasons that her original racketeering and defamation claims failed. *See* 4/12/24 Order, at 5–6 (Dckt. No. 12). The Court will not rehash its previous analysis in great detail. But the punchline is that Jane Roe has not successfully pleaded facts showing a "pattern" of racketeering, nor has she pleaded facts showing that Ehoule disseminated *false* information about her. *See id.* Counts I and VI are dismissed.

Her false imprisonment claim fares a little better. The elements of a false imprisonment claim under Illinois law are: "(1) that the plaintiff was restrained or arrested by the defendant; and (2) that the defendant acted without reasonable grounds (*i.e.*, without probable cause) to believe that an offense was committed by the plaintiff." *Grainger v. Harrah's Casino*, 18 N.E.3d 265, 276 (Ill. App. Ct. 2014). "In Illinois, false imprisonment requires actual or legal intent to restrain which may be effected by words alone, by acts alone or both. The confinement must be against an individual's will; voluntary consent to confinement defeats the claim." *Marsden v. Kishwaukee Cmty. Coll.*, 572 F. Supp. 3d 512, 532–32 (N.D. Ill. 2021) (cleaned up).

Again, the amended complaint alleges that "Ehoule transported and harbored [Jane Roe] in Yangtzee, China and recorded explicit material without her knowledge or consent." *See* Am. Cplt., at 4 (Dckt. No. 19). Read liberally, Jane Roe alleges that Ehoule transported and then restrained her without her consent. Maybe "harbored" doesn't mean restrained, but this Court will read the complaint in her favor.

7

Viewed as a whole, the allegations appear to allege a false imprisonment claim in Illinois. So, Count IV survives prescreening.

Three other claims remain on the table: Jane Roe's claims of invasion of privacy (Count V), intentional infliction of emotional distress (Count IX), and computer fraud and abuse (Count X). This Court previously allowed these claims to survive prescreening. For the same reasons explained in this Court's previous order, Counts V, IX, and X continue to survive prescreening.[4] *See* 4/12/24 Order, at 5–6 (Dckt. No. 12).

In sum, Jane Roe's claims under the federal Trafficking Victims Protection Act of 2000 ("TVPA") and the Illinois Trafficking Victims Protection Act ("ITVPA") (collectively, Count II) survive prescreening. Jane Roe's claims of false imprisonment (Count IV), invasion of privacy (Count V), intentional infliction of emotional distress (Count IX), and computer fraud and abuse (Count X) survive prescreening. All other claims are dismissed.

## II.     Motion to Seal

Next, Plaintiffs moved to seal the complaint and protect their identities.

The Federal Rules have a strong presumption in favor of public disclosure. That presumption includes the names of the parties. Generally speaking, a party must reveal his or her identity by using real names. *See* Fed. R. Civ. P. 10(a).

"The norm in federal litigation is that all parties' names are public." *Doe v. Trs. of Ind. Univ.*, 101 F.4th 485, 491 (7th Cir. 2024). This is because judicial proceedings "are to be conducted in public." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). "The people have a right to know who is using their courts." *Id.*

But there are exceptions. *See id.* ("Records or parts of records are sometimes sealed for good reasons, including the protection of state secrets, trade secrets, and informers; and fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses."). "[A] plaintiff wishing to proceed anonymously must rebut the presumption that the parties' identities are public information by showing that her need for anonymity outweighs the harms of concealment." *Mitze v. Saul*, 968 F.3d 689, 692 (7th Cir. 2020).

Jane Roe says that this case involves "human trafficking, child trafficking, targeted violence, stalking campaign . . . , . . . illegal sharing of documents or explicit material online[,]

---

[4] Plaintiffs mistakenly place the paragraphs explaining the computer fraud and abuse claim under the heading "COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS." *See* Am. Cplt., at 12–13 (Dckt. No. 19). Likewise, Plaintiffs mistakenly place the paragraphs explaining the intentional infliction of emotional distress claim under the heading "COUNT X: COMPUTER FRAUD AND ABUSE." *Id.* at 13. In other words, Plaintiffs mixed up which paragraphs were supposed to go under which heading. The Court will treat Count IX as the intentional infliction of emotional distress claim, and Count X as the computer fraud and abuse claim. And the Court will treat the paragraphs explaining each claim as if they were under the correct heading.

recording/streaming and distribution of nonconsensual intimate images . . . , bribery, hate campaign, [a]nd defamation campaign." *See* Pls.' Mtn. to Redact, at 1 (Dckt. No. 20). She also says that she was threatened with "death, rape, gang rape, targeted violence, kidnapping, illegal distribution of explicit videos and child sexual abuse material (child pornography)." *Id.*

More specifically, as this Court explained in its last order, Jane Roe alleges that Ehoule has engaged in retaliatory behavior. *See* 4/12/24 Order, at 2 (Dckt. No. 12). She does so again in the amended complaint. *See* Am. Cplt., at 5 (Dckt. No. 19). Ehoule allegedly threatened to post explicit content of Jane Roe and posted her personal information on pornography websites. *Id.* at 10–11. Jane Roe says that she had to move several times because of his targeting. *Id.* at 6–7.

These allegations are serious. Jane Roe alleges that she is a victim of sex trafficking, and that she is under a current risk of further mistreatment. That's enough to give rise to a departure from the normal preference for public disclosure.

This Court will allow Jane Roe to proceed anonymously, under the pseudonym "Jane Roe." As previously ordered, the amended complaint is hereby sealed. Plaintiff must file a redacted complaint by December 19, 2024. The amended complaint must replace the references to Plaintiff's real name, and must use the pseudonym "Jane Roe" in its place. A failure to comply will lead to appropriate relief, including possible dismissal.

That said, a defendant is entitled to know who is bringing the claim. So Plaintiff must serve an unredacted version of the amended complaint on the defendants. That amended complaint will otherwise remain under seal.

The Court hereby prohibits the parties from using Plaintiff's real name in any public filing. The Court directs the Clerk's Office to replace Plaintiff's true name with "Jane Roe" on the docket.

### III. Motion to Proceed as a Class

Next, Plaintiffs move for class certification.

To proceed as a class, a putative class must meet certain requirements: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). "The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015).

Jane Roe moves to proceed as a class. The motion rattles off the elements, claiming in a conclusory fashion that all the requirements for class certification are met. *See* Pls.' Mtn. to Redact, at 1 (Dckt. No. 20). But she never points out who the members of the putative class are. *See generally id.*; Am. Cplt. (Dckt. No. 19). Without knowing who the members of the putative

class are, this Court cannot evaluate whether the putative class meets the requirements for class certification.

To the extent that the putative class is the five named Plaintiffs, that class does not meet the numerosity threshold. The Seventh Circuit has recognized that "a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). But "the key numerosity requirement under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." *Id.* That requires an evaluation of "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." 7A C. Wright & A. Miller, Federal Practice and Procedure § 1762 (3d ed.). The putative class of the five named Plaintiffs does not come close to the benchmark numerosity threshold, and Jane Roe has not pointed to any reason why joinder would be impracticable, particularly if the other named Plaintiffs are, as the Court suspects, her children.

Because the numerosity requirement is not met, this Court denies the motion to proceed as a class. There may be other possible problems with a request for class certification, but at this early stage, the numerosity requirement is enough to resolve the motion.

This Court is denying the motion for class certification without prejudice. If Plaintiff later comes to believe that there is a basis for class certification that complies with the Federal Rules, then Plaintiff could file another motion. But based on the unique facts of the case, bringing a class certification seems like an uphill climb on a steep slope.

### IV.  Motion to Reconsider

Finally, Plaintiffs ask this Court to reconsider the denial of their motion for the appointment of counsel.

There is no right to court-appointed counsel in federal civil cases, but the Court may recruit a lawyer to represent an indigent litigant on a *pro bono* basis. *See Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022). In deciding whether to recruit counsel, the Court must determine whether (1) the plaintiff has made a reasonable attempt to obtain counsel on his own or has been effectively precluded from doing so; and if so, (2) given the difficulty of the case, the plaintiff appears competent to litigate it himself. *Id.* (citing *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc)). Because recruited counsel is a limited resource, the Court may also consider the importance and likely merits of the party's claims. *Id.* at 763.

The Court explained in its previous order that Jane Roe made a reasonable attempt to secure counsel. *See* 4/12/24 Order, at 8 (Dckt. No. 12). But the Court also pointed out that Jane

Roe has a post-graduate education and has not indicated any challenges with reading or writing in English. *Id.* Likewise, Caples has prepared a cogent complaint and amended complaint. *Id.*

For those reasons, this Court remains satisfied that Jane Roe can capably represent herself at this stage of the proceedings. So, Caples's motion to reconsider the denial of her motion for attorney representation is denied.

## Conclusion

For the above reasons, Plaintiffs Miles Caples, Lauren Caples, Jonathan Caples, and Simone Caples are dismissed.

Count II (human trafficking) survives in part, to the extent that the claims are brought under the federal TVPA and ITVPA. Count IV (false imprisonment), Count V (invasion of privacy), Count IX (intentional infliction of emotional distress), and Count X (computer fraud and abuse) also survive.

Count I (racketeering), Count III (nonconsensual dissemination of private images), Count VI (defamation), Count VII (cyberstalking), and Count VIII (stalking) are dismissed from the case with prejudice. Count II (human trafficking) is dismissed with prejudice in part.

Plaintiff Jane Roe's motion to seal is granted. Plaintiff's motion to proceed as a class is denied without prejudice. And Plaintiff's motion to reconsider is denied without prejudice.

Date: December 5, 2024

Steven C. Seeger
United States District Judge